UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**FILED**

JAN 2 5 2007

CLERK'S OFFICE
U. S. DISTRICT COURT
EASTERN MICHIGAN

FORD MOTOR CREDIT COMPANY,
    Appellant,

                           Civil No. 06-13563
                           Civil No. 06-13564
v.                             Civil No. 06-13565
                           Hon. Anna Diggs Taylor

BANKRUPTCY ESTATES OF,
WILLIE H. BENN, MILDRED L. RUNYAN,
CLAYTON D. PARMENTER, LYDIA A. PARMENTER
and DAVID WM. RUSKIN, CHAPTER 13 TRUSTEE,
    Appellees.
_____/

## MEMORANDUM OPINION AND ORDER

I.

*Introduction*

    This matter has come before the Court on Appellant Ford Motor Credit Company's (hereinafter "Ford") Appeal from a decision rendered by the United States Bankruptcy Court Eastern District of Michigan Southern Division For the reasons outlined below, the decision of the bankruptcy court is affirmed.

**Background**

    Ford filed the instant Bankruptcy Appeal, seeking the allowance of an administrative expense claim in three cases. The facts of these cases are undisputed. On April 6, 2005, Debtor Willie H. Benn filed for Chapter 13 bankruptcy. Debtor Mildred L. Runyan filed Chapter 13 bankruptcy on June 13, 2005 and Debtors Clayton D. and Lydia A. Parmenter filed bankruptcy Chapter 13 on September 9, 2005. At the time of their filings, each of the Debtors owed Ford the payments remaining due under their lease agreements for automobiles from Ford and none of the Debtors were

in default. Each of the Debtors' proposed Chapter 13 Plans, provided that the Debtors would assume

the lease with Ford and make direct monthly payments on their lease obligations to Ford. The Plans

did not obligate Appellee, Trustee David Ruskin (hereinafter "Trustee") to make any portion of the

monthly lease payments from the estates.

On June 30, 2005, the bankruptcy court entered an Order confirming Mr. Benn's proposed

Chapter 13 Plan and on September 8, 2005 the court entered an Order confirming the same with

respect to Ms. Runyan. Finally, on December 8, 2005, the court entered an Order confirming the

Parmenters' Plan. After confirmation, each of the Debtors defaulted on their leases and Ford filed

motions for relief from the automatic stay in each case. The motions were granted in each case and

Ford liquidated the vehicles at auction. Further, Ford filed motions, pursuant to 11 U.S.C. § 507(a)(1)

and to 11 U.S.C. § 503(b), for allowance of an administrative expense claim to recover damages due

under the terms of the leases. Specifically, Ford sought $11,444.99, which included a $625.00 claim

for attorney fees from Mr. Benn's bankruptcy estate and $11,975.23 from Ms. Runyan's estate, which

included a $550.00 claim for attorney's fees. Also Ford sought $5,369.28 from the Parmenters' estate

which included a $550.00 claim for attorney's fees. The Debtors and the Trustee objected to Ford's

motions.

The bankruptcy court denied Ford's Motion stating:

> The Court is finding primarily for the reason that a confirmed plan is
> res judicata as to the rights of the parties, and that is the creditor at the
> time - - the unsecured creditor and the secured creditor at the time the
> plan was confirmed agreed to certain treatment. And to allow that
> treatment to be altered unilaterally because the debtor is somehow
> unable to comply with what they told that creditor, that's just - - it's
> unfortunate for that creditor, but you can't go back and alter the rights
> of all the parties to a confirmed plan. The case law is absolutely clear,
> and I view that as controlling on these facts.
>
> The other situation - - the other argument that is compelling to me in

2

these cases is that these debtors' plans apparently specifically provided that the car was no longer property of the estate upon confirmation, so at that point the property leaves the estate and there is no benefit. I mean it's kind of an unusual fact situation, but when all the property reverts, I don't think that there is any benefit to the estate, and it should be allowed as an administrative expense. I understand there's an argument that the lease payments maybe that weren't made between confirmation and when the debtor was - - the debtor filed their case could be called an administrative expense, but that's something that the creditors are going to have to deal with at confirmation because once the case is confirmed - - and if the debtor has missed lease payments during that time, in theory, they shouldn't be able to confirm their case as a direct pay, so - - and once the case is confirmed, the confirmed plan is binding, and going forward the property isn't property of the estate. It's confirming a benefit on the debtor, but it's not confirming any benefit on the estate in the way that's defined in 503. I am holding that those claims are not administrative expenses.

On August 9, 2006, Ford filed its Notice of Appeal on all three case with this court and this court, thereafter, heard oral arguments. After reviewing the briefs, hearing oral arguments, and for the reasons articulated below, this court has decided to affirm the bankruptcy court's decision.

## II.

### Jurisdiction and Standard of Review

This Court has jurisdiction under 28 U.S.C. § 158(a) to hear bankruptcy appeals. A bankruptcy court's findings of fact must be upheld unless clearly erroneous. *In re Downs,* 103 F.3d 472, 476-77 (6th Cir.1996). A bankruptcy court's conclusions of law are reviewed *de novo. Stephens Indus. Corp., Inc. v. McClung,* 789 F.2d 386, 389 (6th Cir.1986).

## III.

### Analysis

A debtor declaring bankruptcy under Chapter 13 may assume a lease pursuant to 11 U.S.C. § 365, which provides:

(a) Except as provided in sections 765 and 766 of this title and in

> subsections (b), (c), and (d) of this section, the trustee, subject to the
> court's approval, may assume or reject any executory contract or
> unexpired lease of the debtor.

Additionally, under 11 U.S.C. § 1322, the bankruptcy code defines what a plan in a chapter 13 must and may include. Of particular import for resolution of this appeal are the sections which provide:

> (7) subject to section 365 of this title, provide for the assumption,
> rejection, or assignment of any executory contract or unexpired lease
> of the debtor not previously rejected under such section;
>
> (8) provide for the payment of all or part of a claim against the debtor
> from property of the estate or property of the debtor;
>
> (9) provide for the vesting of property of the estate, on confirmation of
> the plan or at a later time, in the debtor or in any other entity;

It is clear that 11 U.S.C. § 1322 provides that once a debtor assumes a debt, the payment may be made in three ways. They are (1) entirely from the property of the estate; (2) partially from the property of the estate and property of the debtor; or (3) entirely from the property of the debtor. Further, 11 U.S.C. § 1322 provides that property may vest in the estate, the debtor, or any entity. In the instant cases, it is undisputed that when the Debtors assumed the leases, they agreed to make the payments themselves directly to Ford. Therefore, Ford never expected to receive a lease payment from the Debtors' estate. Moreover, it is undisputed that upon confirmation of each of the Debtors' plans, the vehicles vested in the debtors and not in the estate.

What is at issue on this appeal is whether the debtors' assumption of leases, and subsequent default on these leases, entitles Ford to administrative expenses. With respect to administrative expenses, in pertinent part, 11 U.S.C. 503 provides:

> (a) An entity may timely file a request for payment of an administrative
> expense, or may tardily file such request if permitted by the court for cause.
>
> (b) After notice and a hearing, there shall be allowed administrative
> expenses, other than claims allowed under section 502(f) of this title,

4

including--

****

(7) with respect to a nonresidential real property lease previously assumed under section 365, and subsequently rejected, a sum equal to all monetary obligations due, excluding those arising from or relating to a failure to operate or a penalty provision, for the period of 2 years following the later of the rejection date or the date of actual turnover of the premises, without reduction or setoff for any reason whatsoever except for sums actually received or to be received from an entity other than the debtor, and the claim for remaining sums due for the balance of the term of the lease shall be a claim under section 502(b)(6);

In *In re United Trucking Service, Inc.* 851 F.2d 159 (6th Cir. 1988), the Sixth Circuit stated:

In order to qualify a claim for payment as an administrative expense a claimant must prove that the debt: (1) arose from a transaction with the debtor-in-possession as opposed to the preceding entity (or, alternatively, that the claimant gave consideration to the debtor-in-possession); and (2) directly and substantially benefitted the estate.

It is also important to note that a bankruptcy court "has broad discretion to determine whether a request for payment is properly an administrative expense." *In re Moore,* 109 B.R. 777, 780 (Bankr.E.D.Tenn., 1989). Additionally, § 503(b)(1)(A) "should be narrowly construed to keep administrative costs to a minimum and thereby further the Debtor's rehabilitation." *Grantham v. Eastern Marine, Inc.,* 93 B.R. 752, 745 (Bankr.N.D.Fla., 1988).

Here, the bankruptcy court determined that Ford's vehicle leases were not a benefit to the Debtors' estates and, consequently, denied motion for administrative expenses. Ford argues that "contrary to the bankruptcy court's finding, the proper time to consider whether a lease will benefit the estate or unfairly impact the rights of unsecured creditors is at the time of the assumption rather than at the time of the breach." This argument, however, does not accurately state the court's holding, since the court held that the reason the leased vehicles were not a benefit to the estate was because each of the Debtor's plans provided that, upon confirmation, the property vested in the Debtors.

5

Therefore, the cars ceased to be part of the Debtors' estate upon confirmation, which was prior to the Debtors' default on the leases. Moreover, as discussed later, the cases Ford relies on to support its arguments are distinguishable from the instant appeal, because as the bankruptcy court accurately stated, the facts of these cases are unusual.

One of the cases that Ford has cited to support its arguments is *In re Enderle* 352 B.R. 444 (Bankr.E.D.M.I., 2006). The *Enderle* court relied heavily upon *In re Masek,* 301 B.R. 336 (Bankr.D.Neb., 2003), and *In re Hall,* 202 B.R. 929, (Bkrtcy.W.D.Tenn., 1996), which are cases that Ford also cites in support of its arguments. Hence, it is with these two cases that this court will begin its analysis.

In *Hall,* the debtor was leasing an apartment and, prior to filing bankruptcy, the debtor became delinquent on her rent. *Hall,* 202 B.R. 930. When the debtor filed for bankruptcy under Chapter 13, the debtor listed the lessor as a priority creditor in her plan. *Id.* Subsequently, the debtor became delinquent on her post-petition rent and the lessor filed a motion requesting that the past due post-petition rent be paid as an administrative expense. *Id.*

In granting the lessor's request for administrative expenses, the court held that lease payment for the apartment was a benefit to the estate, stating:

> It is a necessary requirement that debtor have a place to live, not only while her bankruptcy case is pending, but at all times. Had MHA (the creditor/lessor) obtained relief from the automatic stay and enforced their general sessions judgment for possession, it is quite possible debtor would have been unable to find another apartment that she could afford. Therefore, remaining in the MHA apartment was quite necessary to preservation of debtor's estate.

In the instant cases, Ford has not shown that the Debtors needed the leased vehicles to preserve their bankruptcy estates. Further, Ford cannot avail itself of the argument that the Debtors could not have found any other cars that they have could afforded. Indeed, with respect to the Parmenters, their

6

lease required them to pay $388.14 a month. Ms. Runyan's lease required that she pay $489.91 a month and Mr. Benn was required to pay $595.29 a month. Thus, it is certainly plausible that each Debtor could have found some transportation to their employment at a lower cost.

The instant cases are equally distinguishable from *In re Masek*. Although it is true that *Masek* involved the court granting a lessor's request for administrative expenses after the debtor defaulted on a vehicle, unlike the instant cases, the trustee in *Masek* was making the lease payments to the lessor and chose to cease making the payments. Additionally, *Masek* is silent on whether the debtor's plan provided that the leased car remained to be part of the estate following the confirmation of the debtor's plan. Consequently, *Masek* is not controlling here.

Ford argues that this court should follow the bankruptcy court's decision in *Ederele*. While *Enderele* does involve a debtor defaulting on a vehicle lease and the lessor subsequently being awarded administrative expenses, the court does not elaborate on the specifics of the debtor's plan, thus, makes it difficult to apply that case to the facts of the instant cases. Moreover, since the *Enderele* court relies on *In re Masek* and *In re Hall*, it may be safe to assume that the facts of that case were more similar to those cases than the cases on appeal here.[1]

In deciding these cases, the bankruptcy court relied on Section 1327(a) of the Bankruptcy Code which provides:

> The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.

Further, courts have held that *res judicata,* which is the basis for the binding effect of a confirmed

---

[1]Ford's reliance on *In re Pearson* 90 B.R. 638 (Bkrtcy.D.N.J., 1988), is also misplaced, since like the debtor in *Masek,* the lease payments were to be made by the trustee.

7

plan, binds the creditor to the terms of the plan and precludes relitigation of issues which either were previously decided or could have been previously decided. See also *In re Cleveland* 349 B.R. 522 (Bkrtcy.E.D.Tenn., 2006) (holding that a confirmed Chapter 13 plan is res judicata, and as such, absent a default under the terms of the confirmed plan, creditors are precluded from making post-confirmation assertions of any interest other than those specifically provided for in the plan).

Applying this rule, the court determined that Ford was not entitled to administrative expenses since upon confirmation the property would not be part of the estates. Indeed, the plans provided that the Debtors would make the monthly payments not utilizing any funds from the estates. Moreover, allowing Ford to gain priority over other creditors who expected to be paid by the Trustee from the Debtors' estates would be manifestly unfair to those creditors. Consequently, Ford is not entitled to an administrative expense claim from the bankruptcy estates, as it never received any payments from the estates and the estates received no benefit.

8

*Conclusion*

**IT IS ORDERED** the bankruptcy court's decision denying Ford's request an administrative

expense claim with respect to Debtors Mildred L. Runyan, Willie H. Benn and Clayton D. and Lydia

A. Parmenter, is affirmed.

**IT IS SO ORDERED**.

DATE: JAN 2 5 2007

Detroit, MI

ANNA DIGGS TAYLOR
UNITED STATES DISTRICT JUDGE

9

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Memorandum Opinion and Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail disclosed on the Notice of Electronic Filing on January 25, 2007.

06-13564
William D. Johnson
17117 W Nine Mile, Ste 925
Southfield, MIO 48075

s/Johnetta M. Curry-Williams
Case Manager